IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN WILLIAM SIMMS, #140766<br>　　　　　Plaintiff,<br>　　v.<br><br>SGT. KENNETH L. FISHER, et al.<br>　　　　　Defendants. | *<br><br>*　CIVIL ACTION NO. DKC-04-3002<br><br>*<br>*** |

## **MEMORANDUM**

I.　Background

On September 16, 2004, this court received for filing a 42 U.S.C. § 1983 prisoner civil rights complaint for damages from John William Simms, who remains confined at the Western Correctional Institution ("WCI") in Cumberland, Maryland. Upon examination of Plaintiff's original and supplemental Complaints, the following allegations have been extracted:

- Defendant Kenneth Fisher, a WCI food service officer, wrote a second false infraction against Plaintiff on September 20, 2001, claiming Plaintiff was hiding food (four hamburgers in a glove), resulting in Plaintiff's transfer out of the kitchen detail to tier work;[1]

- Defendant Johnson made a false comment on Plaintiff's job evaluation of September 26, 2001, when he said that he had counseled Plaintiff for drinking behind the line and that other officers had complained about Plaintiff stealing;

- Defendant Mellott conducted the administrative remedy investigation and decided to dismiss Plaintiff's administrative remedy even before discussing the particulars of the case with Plaintiff;

- Defendant Mealie, the Supervisor of Food Services, conducted cursory and biased investigations into the matter involving Defendant Fisher;

- Defendant Galley accepted Mellott's administrative remedy findings and permitted Defendant Mealie to contribute to the investigation although he knew that Mealie was not going to conduct a fair and impartial investigation;

---

[1] Plaintiff claimed that in December of 1999, Fisher began harassing him and wrote a false matter of record on Plaintiff. Paper No. 1 at Attachment. That incident is not at issue here.

- Defendant Sondervan adopted Defendant Galley's administrative remedy decision without reinvestigating Plaintiff's complaint;[2]

- After Plaintiff's complaint was heard at the Inmate Grievance Office ("IGO") level, personnel retaliated against him by removing him from his job in April of 2002, thus making him indigent and denying him access to the courts, because he would no longer have the funds to purchase writing paper, carbon paper, stamps, envelopes, and ink pens that he would need to file petitions in court;[3] and

- Defendant Paula Kramer, the Associate Director of the IGO, denied Plaintiff a hearing with regard to his removal from his feed-up job in 2002.

Paper Nos. 1 & 5.

II.   Dispositive Filings

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Plaintiff has filed a response thereto. Paper Nos. 17 & 18. The case is ready for the court's consideration. Oral hearing is deemed unnecessary. *See* Local Rule 105.6. (D. Md. 2004).

III.   Standard of Review

   A. Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal

---

[2] Plaintiff complains that Defendant Murphy forwarded information to former Secretary of Public Safety and Correctional Services Stuart Simms in response to Plaintiff's complaints of improper staff behavior and racism without speaking to Plaintiff or other inmates working in the kitchen.

[3] Plaintiff complains that Defendant Roach conspired with Defendants Fisher and Mealie to illegally remove Plaintiff from his job on the tier in April of 2002. Paper No. 5.

conclusions or pleaded facts, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

        B.  Motion for Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden

of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

IV.  Analysis

The following facts are presented by Defendants. On September 23, 2001, Sgt. Fisher wrote a report indicating that Plaintiff was stealing food during his employment as a food service worker in the kitchen. Paper No. 17, Ex. 1. Sgt. Fisher and Lt. Lancaster decided that instead of disciplining Plaintiff, they would remove him from the kitchen to work a feed-up detail on C-Tier. *Id.*, Ex. 2. Defendants claim that Plaintiff received the same pay and credits on the new job as he did for the kitchen job. Paper No. 17, Ex. 2.

Plaintiff filed an administrative remedy claiming that Fisher lied regarding the food theft allegation and that his conduct was racially motivated. *Id.*, Ex. 3. WCI conducted an investigation

into the matter and determined that Sgt. Fisher's conduct toward Plaintiff was professional and unbiased. Paper No. 17, Ex. 2. In her report, investigator Mellott noted that Plaintiff's actions in stealing food warranted more restrictive actions, but as Sgt. Fisher had indicated that Plaintiff was a good worker, Plaintiff was simply moved to another detail.[4]  *Id.*

Plaintiff's remedy was dismissed by Warden Galley on October 31, 2001, and his headquarters appeal was denied on December 7, 2001. *Id.*, Exs. 3 & 4. Plaintiff administratively appealed the decision to the IGO, which held a hearing on April 17, 2003.[5]  *Id.*, Ex. 5. On July 15, 2003, Administrative Law Judge ("ALJ") Richard Rothenburg issued a decision which found that Plaintiff's removal from his kitchen job was not arbitrary, capricious, or inconsistent with the law. *Id.*, Ex. 6. The ALJ also found that: (i) there was no credible evidence that Sgt. Fisher's report regarding Plaintiff's theft of food was false; and (ii) Plaintiff earned the same credits and pay from his current job on C-Tier as he earned while working in the kitchen. *Id.*, Ex. 6. Plaintiff appealed the ruling to the Circuit Court for Allegany County. On February 19, 2003, Circuit Court Judge W. Timothy Finan affirmed the ALJ's decision.[6]  *Id.*, Ex. 7.

In his opposition, Plaintiff claims that his complaint is not barred by claim or issue preclusion as he has not filed a previous law suit in this case and, in filing his administrative remedy and appeals, he was merely complying with the exhaustion requirements. Paper No. 19. He asserts that the parties are not identical and that the issues in this case differ and are based on Defendants'

---

[4]   Other WCI inmates interviewed during the course of the investigation indicated that Fisher had verbalized a personal dislike towards plaintiff. Paper No. 17, Ex. 2.

[5]   The hearing before the ALJ included the admission of written evidence and testimony of two inmate witnesses on Plaintiff's behalf. Paper No. 17, Ex. 5

[6]   Defendants argue, in part, that Plaintiff's Complaint is barred by the doctrines of *res judicata* and collateral estoppel based upon Judge Finan's order affirming the ALJ decision. Paper No. 17.

alleged retaliation against Plaintiff for exercising his constitutional rights and denying him access to the courts. *Id*.

Defendants argue that Plaintiff's claims are subject to claim and issue preclusion.[7] The court need not address that issue because it finds that Plaintiff's claims regarding a falsified matter of record, the loss of his prison kitchen job in September of 2001, and improprieties associated with the administrative remedy process which followed do not comprise constitutional violations.[8]

Plaintiff complains that Sgt. Fisher's infraction was false. This allegation does not state a due process claim. In *Freeman v. Rideout*, 808 F.2d 949 (2nd Cir. 1986), the Second Circuit concluded that with regard to alleged falsified evidence, due process is satisfied where an inmate is afforded the opportunity to confront and challenge the alleged perjured testimony offered in the reports. *Id*. at 953. Plaintiff was indeed afforded the opportunity to challenge the testimony through administrative and court process.[9]

Plaintiff's removal from the kitchen detail job and transfer to a feed-up detail on C-Tier also do not implicate a due process liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court sought to focus attention on the nature of the deprivation, stating that a liberty interest may be created when state action imposes an "atypical and significant hardship on the

---

[7] It may very well be that the decision reached by ALJ Rothenburg and affirmed by Judge Finan has preclusive effect here with regard to claims arising from Plaintiff's job transfer in September of 2001. Indeed, caselaw from this court suggests that the IGO's factual findings and legal conclusions provide sufficient process, *see Batts v. Lee*, 949 F.Supp. 1229 (D.Md.1996), and exhaustion through the IGO serves an important function by: (i) preserving for state correctional systems the initial opportunity to redress problems within their own institutions: (ii) promoting administrative redress; (iii) filtering out groundless claims; and (iv) fostering better prepared litigation of claims aired in court. *See Chase v. Peay*, 286 F.Supp.2d 523, 530, n. 12 (D. Md. 2003), *aff'd,* 98 Fed.Appx. 253 (4th Cir. 2004) (per curiam).

[8] Plaintiff's protestations to the contrary, the majority of the claims raised in his Complaints relate to Defendant Fisher's false infraction, his removal from his kitchen job in 2001, and the ensuing administrative remedy process.

[9] An inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. *See Freeman*, 808 F.2d at 951.

inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U. S. at 484. Following the reasoning of the Supreme Court in *Sandin*, it appears that no liberty interest is implicated in a decision relating to prison job assignments.[10]  *See Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996) (per curiam); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995).   Plaintiff's removal from the kitchen job and re-assignment to another food detail did not constitute a dramatic departure from, or atypical event in, the ordinary day-to-day incidents of prison life.  The fact that Plaintiff was assigned to a kitchen detail and removed to another detail in food services did not affect his earnings or earned diminution credits.  It cannot be said to have imposed a significant hardship on Plaintiff.  Therefore, Plaintiff's due process claim regarding his removal from the kitchen to feed-up detail is without merit.[11]

Insofar as Plaintiff takes issue with the Maryland Division of Correction administrative remedy process, asserting that Defendants involved in his grievances, from the institution to the IGO level, did not conduct investigations or make decisions in a thorough or unbiased manner, the court finds no constitutional violation.  Records show that Plaintiff received review of his grievances at every administrative level and was able to appeal decisions before administrative and circuit court judges.  Based on this level of review, the court therefore finds no underlying due process violation.

---

[10]  Prior to *Sandin*, this Circuit found that inmates did not have a constitutionally protected right to an institutional job or to remain in a particular job once assigned. *See Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978); *Bowring v. Godwin*, 551 F.2d 44, 48 n. 2 (4th Cir. 1977); *see also Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992).

[11]  Plaintiff claims that his September, 2001 job reassignment was motivated by race. To succeed on an equal protection claim, Plaintiff  "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Washington v. Davis*, 426 U.S. 229, 239-42 (1976); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Plaintiff must at least go beyond mere conclusory assertions that a particular action was taken because of his race. *See Chapman v. Reynolds*, 378 F.Supp. 1137, 1139 (W.D. Va. 1974). Upon examination of the materials, the court finds that Plaintiff has failed to prove that his removal from his kitchen  job was based on racial discrimination.  At best, the record reveals that Sgt. Fisher may have a personal issue with Plaintiff.  *See* Paper No. 17, Ex. 4.

Finally, the court observes that Defendants' summary judgment motion did not respond to Plaintiff's claims that: (i) soon after his IGO hearing in April, 2002, Defendants Fisher, Roach, and Mealie conspired to removed Plaintiff from his protective custody food service job to the job bank in retaliation for his filing remedies; (ii) Defendant Kramer improperly administratively dismissed Plaintiff's grievance appeal and denied him an IGO hearing on the July, 2002 job removal grievance; and (iii) his removal from the food services job resulted in the loss of earnings and impeded his access to courts.  Consequently, the motion for summary judgment shall be granted in part and denied in part.  Defendants shall be required to file a supplemental response to the complaint regarding the aforementioned claims.

V. Conclusion

For the aforementioned reasons,  Defendants' Motion for Summary Judgment shall be granted in part and denied in part.  A separate Order follows.


Date:    11/28/05                                                /s/
                                                         DEBORAH K. CHASANOW
                                                         United States District Judge